IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 10, 2008

Charles R. Fulbruge III
Clerk

No. 07-30912

GRAMBLING UNIVERSITY NATIONAL ALUMNI ASSOCIATION, et al.

Plaintiffs-Appellants

V.

BOARD OF SUPERVISORS FOR THE LOUISIANA SYSTEM, et al.

Defendants-Appellees

Appeal from the United States District Court
for The Western District of Louisiana
No. 3:06-CV-1571

Before PRADO, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

This appeal arises from the district court's dismissal, pursuant to Federal Rule of Civil Procedure 12(c), of the Grambling University National Alumni Association's[1] (the Association) civil rights complaint brought against the Board

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The Plaintiffs-Appellants in this matter are (1) the Grambling University National Alumni Association, (2) three individual members of the Alumni Association, including James Bradford, the Association's former president (3) a student at Grambling, (4) two retirees from Grambling University, and (5) the Mayor and two city councilmen of the town of Grambling. Also originally made a plaintiff was William Bradford, a minor and purported "future" student of Grambling. The Boards successfully sought dismissal of the claims made by Bradford prior

of Supervisors for the University of Louisiana System and the Louisiana Board of Regents[2] (the Boards), the bodies charged with managing Louisiana's state universities. The Association alleged that the Boards committed various acts and omissions that harmed Grambling University and thereby violated the Association's civil rights. The district court dismissed the Association's complaint in its entirety, finding that the Association failed to exhaust its administrative remedies, lacked standing to sue for many of its allegations, and failed to plead the requisite elements of a Civil Rights Act claim. The district court also denied the Association's request for recusal of all judges in the Alexandria Division of the Western District of Louisiana–raised for the first time in its motion for reconsideration and only after the case had lingered in the division for nearly ten months–finding it to be both untimely and devoid of merit. Finding no error in the district court's decision and no merit to the Association's contentions on appeal, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Grambling University is a primarily African-American college located in Grambling, Louisiana. Like all Louisiana state universities, Grambling is managed by the Boards. LA. CONST. art. VIII, §§ 5, 6. The Boards are mandated by law to exercise all power to direct, control, supervise, and manage the universities under their authority. Id. § 6. The Louisiana Governor appoints the members of the Boards with the advice and consent of the Louisiana Senate. Id.

The Association and certain individuals, none of whom are current employees of Grambling University, sued the Boards on September 12, 2006,

---

to filing their motion for judgment on the pleadings and the Plaintiffs have not appealed that decision.

[2] The Defendants-Appellees in this matter are (1) Grambling University's President and Vice President of Finance, (2) the Board of Supervisors for the University of Louisiana System and its President, (3) the Louisiana Board of Regents, and (4) the Louisiana Board of Regents' President.

raising a host of allegations purportedly actionable under Title VII and 42 U.S.C. §§ 1981, 1983, 1985, and 1988. The Association's complaint neither lays out the elements to state a cause of action under these various statutes nor specifies which particular allegations it believes are actionable under which statutes. Moreover, the Association does not specify which allegations are attributable to which Defendants.[3] Nevertheless, the Association primarily contends that the Boards committed various acts and omissions that harmed Grambling and thereby, in some unspecified way, violated the Association's civil rights. Notably, the Association's complaint does not allege that the Boards acted out of racial animus.

The case was initially assigned to U.S. District Judge Robert James, but prior to the Boards' first appearance, Judge James recused himself for reasons not stated in the record. On September 21, 2006, the case was assigned to the Alexandria Division and assigned to Judge Dee Drell. Shortly thereafter, the Boards made their first appearance, listing retired Western District of Louisiana Judge F. A. Little as one of their counsel. Former Judge Little served in the Alexandria Division during his tenure on the Western District.

On December 11, 2006, the Boards filed a motion for judgment on the pleadings under FED. R. CIV. P. 12(c), seeking dismissal of the Association's complaint. Before ruling on that motion, Judge Drell recused himself. The recusal order, dated June 21, 2007, states only that Judge Drell recused himself because he had sent a Notice of Waiver of Judicial Qualification and not all counsel had responded. On June 26, 2007, the case was reassigned to Judge James Trimble.

---

[3] The Association's allegations against Grambling's President and Vice President of Finance deal primarily with the manner in which they managed the University. Examples include allegations that the Vice President of Finance failed to follow the directives of the President and that the Vice President fired individuals that did not provide him with funding for "pet projects." The deficiencies in the Association's complaint noted in this opinion apply equally to any allegations brought against these individuals.

Approximately three weeks later, on July 19, 2007, Judge Trimble issued an eleven-page opinion granting the Boards' motion for judgment on the pleadings. The opinion dismissed the Association's complaint in its entirety, noting that the Association (1) failed to exhaust its administrative remedies before filing its Title VII claims, (2) lacked standing to sue under the identified federal laws, and (3) failed to plead the necessary elements of a Title VII or Civil Rights Act claim.

Shortly thereafter, the Association filed a Rule 59 motion for reconsideration essentially arguing, for the first time, that every judge sitting in the Alexandria Division of the Western District of Louisiana should have recused themselves based on Judge Little's appearance on behalf of the Boards. The Association also reiterated the arguments previously made in support of the viability of its Title VII and civil rights claims. Judge Trimble denied the motion for reconsideration, reiterating the defects in the Association's complaint. He also found its recusal argument–filed ten months after the case was first assigned to the Alexandria Division–both untimely and unmeritorious.

The Association originally appealed the entirety of that decision, although it has since successfully moved to dismiss the portion of its appeal challenging the dismissal of its Title VII claims. During the pendency of this appeal, the Boards filed a motion for sanctions, urging us to deem the appeal "frivolous" and impose appropriate sanctions. We address this request following our discussion of the Association's claims.

## II. DISCUSSION

The Association brings two principal arguments on appeal. First, the Association contends that Judge Trimble, as well as, by implication, all other judges in the Alexandria Division of the Western District, should have recused himself based on former Judge Little's appearance on behalf of the Boards. Second, the Association argues that the District Court erred in granting the

4

Boards' Rule 12(c) motion because the Association's complaint, with certain proposed amendments, is sufficient to state viable claims under 42 U.S.C. §§ 1981, 1983, and 1985.

A.  Recusal

We review a district court's denial of a recusal motion for abuse of discretion.  Trevino v. Johnson, 168 F.3d 173, 178 (5th Cir. 1999).  A district court abuses its discretion in denying recusal where "a reasonable man, cognizant of the relevant circumstances surrounding [the] judge's failure to recuse, would harbor legitimate doubts about the judge's impartiality."  United States v. Bremers, 195 F.3d 221, 226 (5th Cir. 1999).

28 U.S.C. § 455 governs the recusal of a district court judge.  Although the Association fails to cite this statute or its standards, it presumably intended to move under subsection (a), which requires disqualification if a judge's "impartiality might be reasonably questioned."  28 U.S.C. § 455(a).

Section 455 does not contain an explicit timeliness requirement.  Nevertheless, this Court has consistently inferred such a requirement.  See United States v. Sanford, 157 F.3d 987, 988 (5th Cir. 1998).  To avoid a finding of untimeliness, "one seeking disqualification must do so at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification."  Travelers Ins. Co. v. Liljeberg Enters., Inc., 38 F.3d 1404, 1410 (5th Cir. 1994).  While this Court has carefully avoided any per se rule on untimeliness, it has noted that "the most egregious delay–the closest thing to per se untimeliness–occurs when a party already knows the facts purportedly showing an appearance of impropriety but waits until after an adverse decision has been made by the judge before raising the issue of recusal."  Sanford, 157 F.3d at 988-89.

That precise situation occurred here.  Despite having knowledge of the facts underlying its division-wide recusal argument in October of 2006, the

Association did not immediately move to have this case assigned to a judge from another division or district and instead allowed the case to linger in the Alexandria Division for nearly ten months. When the Association finally acted, it did so only after Judge Trimble had dismissed its claims. The Association does not attempt to explain or justify this unreasonable delay. Thus, we find no error in the district court's recusal ruling.

Having established that the Association raised its division-wide recusal argument in an untimely fashion, the Association cannot prevail on this issue absent an allegation that Judge Little's relationship as a colleague of Judge Trimble was somehow unique or different than the relationship Judge Little shared with the other members of the Alexandria Division–an allegation it has not made. Accordingly, Judge Trimble did not err in denying the Association's belated recusal request.

B.    The Association's Claims

The Association also challenges the district court's grant of the Boards' motion for judgment on the pleadings. We review a district court's ruling on a Rule 12(c) motion de novo. Guidry v. Am. Pub. Life Ins. Co., 512 F.3d 177, 180 (5th Cir. 2007). In so doing, we "accept[ ] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." Id. (citations omitted). To survive a Rule 12(c) motion, the plaintiff must plead sufficient facts to state a plausible claim for relief on the face of the complaint. Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1974 (2007). The allegations must be sufficient "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (citation and footnote omitted). If the plaintiff fails to allege facts sufficient to "nudge[ ] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." Id. at 1974.

The Association's complaint lodged forty-three vague allegations against the Boards dealing primarily with their management of Grambling University. The allegations can be broken down into four general categories.

First, the Association complained of various acts or omissions concerning Grambling University's internal and external management. Examples include allegations that the Vice President of Grambling failed to follow the directives of the President of Grambling and that the Boards mismanaged Grambling.

Second, the Association complained about the manner in which Grambling University employees–none of whom are named plaintiffs–were treated. Examples include allegations that the Boards destroyed the morale of Grambling employees and that the Boards denied employees designated for termination any meaningful grievance procedure.[4]

Third, the Association complained that the Boards ignored or disregarded certain contracts. Examples include allegations that the Boards disregarded "the importance of the higher education settlement, which is a contract," and that the Boards entered "into a consortium for doctorates in leadership with Louisiana Tech and the University of Louisiana at Monroe."

Finally, the Association lodged a number of miscellaneous allegations that are insufficient to state a claim under any of the civil rights laws the Association cites. Examples include allegations that the Boards removed the license plate from the vehicle of one of the Association's members and that the Boards promoted "dissension among alumni and other interested parties."

We address these categories of allegations below.

1.  Allegations Concerning the Boards' Management of Grambling University

---

[4] Although we dismissed the appeal of these claims at the Association's request, they are relevant to the sanctions issue and thus discussed in that portion of our opinion.

The vast majority of the Association's allegations concern acts or omissions committed by the Boards in their management of Grambling University. The Association contends that these acts and omissions harmed Grambling and thus somehow violated the Association's civil rights. The district court properly held that the Association lacks standing to assert these claims.[5]

To establish the "irreducible constitutional minimum" of standing, a plaintiff must show, among other things, that it has suffered an "injury in fact," which the United States Supreme Court has described as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 566 (1992) (internal citations omitted). The Association's allegations concerning the Boards' mismanagement of Grambling fail on this ground. These allegations relate to acts or omissions by the Boards that, while conceivably harmful to Grambling University or its employees, could not produce a "concrete" injury to the Association or the other named Plaintiffs.

Further, the Association's unsupported contentions that it should be entitled to rectify the purported harm to the University by suing on its behalf fail for the same reasons. It is fundamental that a litigant cannot sue on behalf of a third party absent an injury in fact giving the litigant a sufficient stake in the outcome of the disputed issue. Powers v. Ohio, 499 U.S. 400, 410 (1991); McCormack v. Nat'l Collegiate Athletic Ass'n, 845 F.2d 1338 (5th Cir. 1988).

The Association's allegations concerning the Boards' mismanagement of Grambling fail for another reason. These allegations are essentially a challenge

---

[5] The presence of a current Grambling student as a plaintiff does not change the analysis. Nowhere in the Association's complaint is that student's connection to the alleged wrongdoing or any harm suffered therefrom explained in any way. See Doe v. Tangipahoa Parish Sch. Bd., 494 F.3d 494, 497 (5th Cir. 2007) (en banc) (holding that student lacked standing absent evidence that he was personally exposed to the alleged misconduct). Similarly, the other individual plaintiffs do not allege anything that would save their claims from dismissal or alter the analysis herein in their favor.

to the policy decisions of a politically appointed body and thus are wholly inappropriate for judicial resolution. Generally speaking, it is not this Court's role to tell Louisiana how to exercise discretionary functions such as allocating university funding. Political complaints should be handled through the political process.

2.      The Association's Contract-Related Claims

The Association's complaint contains a number of contract-related claims presumably intended to be actionable under 42 U.S.C. § 1981. Section 1981 protects the equal rights of "[a]ll persons within the jurisdiction of the United States" to "make and enforce contracts" without respect to race. 42 U.S.C. § 1981. Section 1981 offers relief from racial discrimination that "blocks the creation of a contractual relationship" or "impairs an existing contractual relationship" but only where "the plaintiff has or would have rights under the existing or proposed contractual relationship." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006).

The Association's complaint wholly fails to state the basic elements of a section 1981 claim. While the Association proposes amending its complaint to include its racial composition, its amended complaint would still fail to allege (1) instances in which the Boards refused to enter into a specific contract with the Association because of racial animus or, (2) that the Boards prevented the Association from enforcing any contractual rights based on the racial composition of the Association. Further, while the Association attempts to identify specific contracts related to its allegations, it fails to allege, and does not propose to allege, that it was a party to the vast majority of these contracts.

The closest the Association comes to stating a viable section 1981 claim is in allegation "OO" of its complaint. There, the Association alleges that the Boards "replac[ed] the Grambling University National Alumni Association with the Grambling Black & Gold Foundation, Inc. in connection with the Bayou

Classic." The Association alleged in its motion for reconsideration that "this is a violation of a private contract." It also proposed an amendment alleging that the actions of the Boards were motivated by racial animus. Even with these amendments, however, allegation "OO" still fails to identify the content of the contract at issue, the particular contractual rights that the Boards prevented the Association from exercising, and how the Boards' decision to "replace" the Association with a different organization was motivated by racial animus. Indeed, without some information concerning the racial composition of the organizations in question or other explanation of how this alleged breach of contract was racially motivated, the Association's allegation cannot satisfy the plausibility threshold established by the Supreme Court in Twombly.

    3.    The Association's Remaining Claims

Finally, the Association's complaint contains a number of allegations having no apparent nexus to civil rights statutes. The Association alleges that the Boards:

- Threatened an Association member with legal proceedings
- Removed a license plate from an Association vehicle
- Promoted dissension amongst Grambling alumni
- Released false information about the Association to a local paper

Although the Association presumably intended these allegations to be actionable under 42 U.S.C. § 1983 or 42 U.S.C. § 1985, they fall well short of stating viable civil rights claims. Accordingly, we find no error in the district court's decision to dismiss them.

In light of the forgoing, we AFFIRM the district court's dismissal of the Association's claims. The Association has not alleged that its allegations state viable state law claims, and we express no opinion on the subject.

C.    Sanctions

The Boards move this Court to impose sanctions on the Association for pursuing this appeal, which it describes as "frivolous." The Boards argue that this appeal comes in the face of two well-reasoned opinions from the District Court explaining that the Association (1) lacks standing, in many instances, to assert federal claims based on the Boards' alleged conduct, and (2) failed to plead the requisite elements to state a cognizable claim under the civil rights laws. The Boards contend that the Association's appeal simply reiterates many of the arguments rejected by the District Court below, without explaining why the District Court was wrong.

This Court has the discretion to penalize frivolous appeals by awarding "just damages and single or double costs to the appellee." FED. R. APP. P. 38. "An appeal is frivolous if the result is obvious or the arguments of error are wholly without merit." Coghlan v. Starkey, 852 F.2d 806, 810-11 (5th Cir. 1988).

Despite two well-reasoned opinions from the District Court explaining why the allegations in the Association's complaint do not state viable claims, the Association has largely rehashed its arguments from below in this appeal. The Association does not make any reasonable argument for the modification or reversal of the precedent cited by the District Court in support of its decision. For example, the Association argues on appeal, as it did below, that it has standing to sue on behalf of Grambling University because the University lacks the capacity to "sue and be sued." As explained by the District Court, a party asserting third-party standing not only must show an impediment to the third party's ability to protect its own interests, but also it must show that it has suffered an injury in fact. The Association has never explained how alleged injuries to Grambling or its employees resulted in concrete harm to the Association or other Appellants.

The Association also argued in this appeal, at least initially, that its purported Title VII claims were viable despite never having filed a complaint

11

with the Equal Employment Opportunity Commission. According to the Association, it "defies common sense" that it could not pursue these claims. But a good-faith belief in the correctness of a litigant's position is not an excuse for urging a point on appeal that is unsupportable based on the existing law and facts. See id. at 809-810. Although the Association sought dismissal of its own Title VII claims mid-way through this appeal, by that time, the Court and the Appellants had already spent time addressing those issues.

Finally, the Association argues that its complaint states colorable claims under 42 U.S.C. §§ 1983 and 1985, yet it fails to allege even the most basic elements of such actions.

While we agree with the Boards that these and other arguments made by the Association border on frivolous, we decline to impose sanctions at this time. We warn the Association and its counsel, however, that future frivolous filings will not be tolerated. The civil rights laws were intended to redress legitimate discriminatory conduct–they are not a solution for every possible problem. The Association and its counsel would be wise to heed this distinction in the future.

Accordingly, we DENY the Boards' motion for sanctions. The district court's judgment is AFFIRMED.